*1056 OPINION OF THE COURT
Peter C. Buckley, J.
This matter is before the court to determine Mapp issues based upon search warrants issued in this case. The parties have submitted the issues to the court on the papers, without a hearing.
The court makes the following findings of fact and conclusions of law.
Findings of Fact
On October 29, 2009 Elmira police applied for a search warrant to search 305 W. Clinton Street, apartment 2, in the City of Elmira. The warrant application was made to Elmira City Court Judge Thomas Ramich.
The affidavit of Sergeant William Bresser reflects that the police department had received numerous civilian complaints regarding Lewis Kevin Thomas selling drugs from the residence. The complaints noted the smell of illegal drugs and heavy traffic coming and going from the residence for short periods consistent with drug sales. His apartment was described as being the downstairs apartment on the right and a picture of the residence was included with the application. The apartment was identified as apartment 2.
A controlled buy of cocaine was conducted from Thomas on October 26, 2009 at his residence, using a confidential informant (Cl). The substance field-tested positive for cocaine. The Cl advised police in an affidavit that he has known Lewis Thomas for some three years and has known him to buy and sell crack cocaine. At the time of the controlled buy, the Cl stated that Thomas was in possession of an additional quantity of cocaine packaged for sale. The Cl further stated that up to four or five individuals at a time stay with Thomas and sell cocaine at his direction. Thomas has a handgun in his bedroom, according to the Cl. Thomas’s pedigree and criminal history information was attached to the warrant application.
Sergeant Bresser attested to the fact that the Cl has been used by police in past cases and has proven reliable. According to Bresser, information provided by the Cl has led to the seizure of narcotics and subjects who were selling the same. The information supplied by the Cl further was supported by the intelligence developed by police in their investigation of Thomas, including field interviews in the neighborhood, according to Bresser.
*1057 In the warrant application, Sergeant Bresser states that there is probable cause to believe that the property specified (drugs and drug sale material) may be found at 305 W Clinton Street, or on the person of Lewis Thomas. No other individuals are listed by name or other description. The “Affidavit for Search Warrant” lists the residence “and the person(s) of Lewis K. Thomas, Black Male, DOB [xx/xx/xxxx], SSN [xxx-xx-xxxx] and Anyone found within or leaving 305 W. Clinton St. Apt. #2 Elmira, NY 14901.”
The warrant itself uses the same language to describe the residence, the person of Lewis K. Thomas or anyone found within or leaving said residence. The warrant authorized service at any hour and provided that notice of authority or purpose was not required.
When police arrived to serve the warrant they discovered the mailboxes which listed Lewis K. Thomas as residing in apartment 4 — still the lower right apartment. An amended warrant application was provided to Judge Ramich, who issued an amended warrant listing apartment 4 as the residence to be searched.
Defense counsel argues that the residence searched was actually apartment 1, but that it was the lower right hand apartment and that the defendant was present there in the living room of Thomas’s apartment. The defendant was searched and a quantity of crack cocaine was found in his right front watch pants pocket. Lab reports found a substance containing 750 milligrams of cocaine.
Conclusions of Law
The court makes the following conclusions of law based upon the beyond a reasonable doubt legal standard.
The defendant was searched and the resulting cocaine was located on him based upon a search warrant directing that all persons found in or leaving the stated residence be searched. The defendant was not listed by name or description in the warrant.
The warrant did state that four to five individuals at any given time stayed with Lewis Thomas in the apartment and sold cocaine at his direction. The affidavit did not disclose as a part of the police surveillance whether any obviously innocent traffic was seen coming from the residence. There was an indication that a lot of short-drug-purchase-type traffic came and went to the apartment.
*1058 The Court of Appeals decided the case of People v Mothersell (14 NY3d 358 [2010]) on April 1, 2010. The Court declared a warrant invalid for a residence which directed the search of all persons located therein at the time of the execution of the warrant.
“ ‘The facts made known to the Magistrate and the reasonable inferences to which they give rise, must create a substantial probability (see People v Baker, 30 NY2d 252, 259) that the authorized invasions of privacy will be justified by discovery of the items sought from all persons present when the warrant is executed. If this probability is not present, then each person subject to search must be identified in the warrant and supporting papers by name or sufficient personal description.’ ” (People v Mothersell, 14 NY3d 358, 362 [2010], quoting People v Nieves, 36 NY2d 396, 404-405 [1975].)
The Nieves case involved the search of a restaurant which was open to the public and the Mothersell case involved a residence apartment.
Nieves reviews the factors which a court should consider in reviewing such a warrant application and Mothersell describes the factors as follows:
“Among these were the character of the premises, the nature of the illegal activity believed to be conducted at the location, the number and behavior of the persons present at the time of day or night when the sought warrant was proposed to be executed, and whether persons unconnected with the illicit activity had been observed at the premises.” (14 NY3d at 364.)
“The essential object of the searching examination required of the reviewing magistrate under Nieves, is to guard against the authorization of a dragnet likely to include the innocent, a danger that would otherwise routinely be courted in issuing all-persons-present warrants.” (Id.)
“ ‘[T]he facts before the issuing Judge at the time of the warrant application, and reasonable inferences from those facts, must establish probable cause to believe that the premises are confined to ongoing illegal activity and that every person within the orbit of the search possesses the articles sought.’ ” (Id., quoting Nieves at 404; see also Ybarra v Illinois, 444 US 85 [1979].)
*1059 Quite interestingly, the Court of Appeals stated in Mothersell, “Indeed, notwithstanding our recognition in Nieves of the possibility of a valid any-person-present warrant, it does not appear that this Court has ever actually sustained such an instrument.” (14 NY3d at 363.) That appears to be pretty strong language from the Court of Appeals — in other words, while such warrants aré theoretically possible, we’ve never seen one that met muster.
“At the time of Nieves, the constitutionality of CPL 690.15 (2), enacted only five years before, had been seriously questioned (36 NY2d at 404) and it was evident that the statute as written was potentially overbroad in its application (id.). We nonetheless reasoned that there could be circumstances in which a showing of probable cause to search a place would also afford probable cause to infer that everyone present at the place had upon their persons the items specified in the warrant, and thus, that the statute was capable of application without constitutional offense. We recognized, however, the exacting nature of the showing necessary to justify the inferences essential to the statute’s constitutionally permissible use, and summarized the ‘carefully circumscribed,’ indeed ‘severely limited,’ grounds upon the search of an individual identified in the authorizing warrant only as ‘a[ ] person present’ could be performed.” (Id. at 362-363.)
More strong, bold and demanding language from the Court of Appeals — “exacting nature of the showing necessary”-, “carefully circumscribed”; and “severely limited” (id. at 363 [emphasis added]).
Having reviewed the Mothersell decision, it is apparent that the search warrant application present in the instant case does not meet those standards of detail and description required by the Court of Appeals. The defendant is not described by name or other description. He was not identified as being present at the time of the controlled buy. There was no detailed description of the traffic which was going in and out of this residence. There was no description of the actual information learned by police from the individuals leaving the residence, although general reference was made regarding such interviews. There was no description regarding whether or not there was apparently legitimate or innocent traffic in and out of the residence.
Courts traditionally depended upon the language of CPL 690.15 and did not understand the importance of the ruling in *1060 Nieves. The Court of Appeals has now made plain the importance of the Nieves standard in its decision in Mothersell.
The argument by the District Attorney concerning application of Mothersell to pending cases, arguing that the police could not have known of the requirements before Mothersell and the exclusionary rule should not thus be applied, is rejected. The Court of Appeals makes it clear in Mothersell that its ruling is not new law; that, as stated above, it is Nieves restated; and that both courts and police should have been paying more attention to the standard set forth in Nieves. While it is clear that the facts in Mothersell more closely follow those found on the street regarding drug sales and trafficking (a rented apartment versus a restaurant), this court feels that the directive of Mothersell is that it should be applied to pending cases.
The warrant application was insufficient to support the “all-persons-present” provisions in the warrant and the cocaine seized from the defendant as a result of that warrant is hereby suppressed.