951 P.2d 1243

**STATE of Hawai'i, Petitioner–Appellant,**

v.

**Barry SCOTT, Respondent–Appellee**

No. 18170.

Supreme Court of Hawai'i.

Jan. 8, 1998.

James M. Anderson, Deputy Attorney General, on the brief, for petitioner-appellant.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

■ We granted Petitioner–Appellant State of Hawaii's (the prosecution) petition for a writ of certiorari to review the decision of the Intermediate Court of Appeals (ICA) in *State v. Scott*, No. 18170, slip. op. (App. Apr. 30, 1997). In *Scott*, the prosecution appealed the circuit court's June 9, 1994 Findings of Fact, Conclusions of Law and Order Granting Defendant Barry Scott's Motion to Quash Search Warrant and Suppress Evidence (the June 9, 1994 Order). The ICA affirmed the June 9, 1994 Order, holding, *inter alia*, that an anticipatory search warrant (ASW) [1] is constitutionally permissible if the warrant:

(1) is issued by an authorized judge based on probable cause supported by oath or affirmation; (2) is based on a clear showing, supported by oath or affirmation, of law enforcement's need to have the ASW issued before the occurrence of the event that will generate the probable cause; (3) particularly describes the place to be searched and the things to be seized; (4) authorizes a search only upon the occurrence of the event generating the probable

---

1. "An anticipatory search warrant is a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." 2 W. La Fave, *Search & Seizure*, § 3.7(c), at 362 (3d ed.1996). By definition, it is

"issued before the necessary events have occurred which will allow a constitutional search of the premises; if those events do not transpire, the warrant is void." *United States v. Garcia*, 882 F.2d 699, 702 (2d Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989).

cause; (5) authorizes a search only within the probable life of the probable cause; and (6) is executed before the probable cause in fact expires.

*Id.,* slip. op. at 1–2, 13–14. Applying this newly formulated test to the facts of the *Scott* case, the ICA concluded that "the ASW partially failed to satisfy requirement (1) and completely failed to satisfy requirements (4) and (5)." *Id.* slip. op. at 2.

Without addressing the constitutionality of an ASW,[2] for the reasons set forth below, we hold that they are impermissible under Hawai'i Revised Statutes (HRS) § 803–31 (1993),[3] and Hawai'i Rules of Penal Procedure (HRPP) Rule 41(a).[4] Accordingly, we affirm the circuit court's June 9, 1994 Order, albeit for different reasons. We also, pursuant to Rule 2(a) of the Rules of the Intermediate Court of Appeals, direct that an order depublishing the ICA's opinion be filed concurrently with this opinion.

## I. *RELEVANT FACTS*

On December 8, 1992, Honolulu Police Department Officer Linda D'Aquila, while working on a narcotics detail at the Honolulu International Airport, intercepted a Federal Express package addressed to Scott. Following an alert on the package by a narcotic-detecting dog, Officer D'Aquila obtained a warrant to search the package. A field test conducted by the police disclosed that the package contained 17.9 grams of crystal methamphetamine. Based on her belief that probable cause of criminal activity would ex-

ist after delivery of the parcel, Officer D'Aquila sought a warrant to search Scott's residence. In the facts and circumstances attached to and incorporated in her affidavit in support of the search warrant, Officer D'Aquila averred:

That a controlled delivery of said parcel is planned to take place on 12–09–92 at 545B Keolu Drive. I will pose as a Federal Express delivery-person and will personally deliver said parcel to the above address.

That after said parcel is accepted at the address, the search warrant will be served after a reasonable amount of time has elapsed.

The district court approved the application for a warrant to search Scott's home between 7:00 a.m. and 10:00 p.m. for the parcel, cocaine and other illegal drugs, drug paraphernalia, records of drug transactions, articles of personal property establishing identity, and currency that might be commingled with narcotics. The warrant was valid for ten days from the date of its issuance.

On December 9, 1992, at approximately 11:20 a.m., Officer D'Aquila posed as a Federal Express delivery-person and delivered the parcel to Scott's residence. About ten minutes after handing the parcel to Scott, Officer D'Aquila returned pretending to need a receipt for the parcel. When Scott opened the door, Officer D'Aquila greeted him with a search warrant and proceeded, with the assistance of several officers, to search Scott's home. The officers found the opened pack-

---

**2.** Because we find the language of the statute and rule governing search warrants preclusive, we do not reach the constitutionality of an ASW. We note, however, that most jurisdictions that have considered ASWs have concluded that they are not *per se* unconstitutional. *See* J. Adams, "Anticipatory Search Warrants: Constitutionality, Requirements and Scope," 79 Ky. L.J. 681, 687 (1991); *Kostelec v. State,* 112 Md.App. 656, 685 A.2d 1222, 1227 (1996), *cert. granted,* 345 Md. 237, 691 A.2d 1313 (1997).

**3.** HRS § 803–31 provides:
**Search warrant; defined.** A search warrant is an order in writing made by a judge or other magistrate, directed to an officer of justice,

commanding the officer to search for certain articles supposed to be *in the possession of* one who is charged with having obtained them illegally, or who keeps them illegally, or with the intent of using them as the means of committing a certain offense.
(Emphasis added).

**4.** HRPP Rule 41(a) provides:
**Authority to Issue Warrant.** A search warrant authorized by this rule may be issued by any district or circuit judge within the circuit wherein the property sought *is located.* ...
(Emphasis added).

82

age on the bed and a handwritten note on a white envelope that read: "Please leave Fed Express for B. Scott at door. Thanks." They also found a dirty, yellow baggy in the bedroom closet.

On August 10, 1993, the prosecution charged Scott with second degree promotion of a dangerous drug, in violation of HRS § 712–1241(1)(b) (1993).[5] On February 16, 1994, Scott filed a motion to quash search warrant and suppress all items "seized either on December 8, 1992 at the airport, or during the same December 9, 1992 search of the residence." Scott argued that Officer D'Aquila's affidavit did not give the court sufficient probable cause to issue the warrant. The circuit court agreed, and issued its June 9, 1994 Order quashing the search warrant and suppressing evidence. The State timely filed its appeal, challenging the following findings of fact and conclusions of law:

## FINDINGS OF FACT

5. None of the facts contained in the affidavit provided any grounds to believe that any of the requested items, other than the parcel, were present in Mr. Scott's home.

6. Therefore, no factual basis or probable cause supported the issuance of a search warrant and authorization to seize such items.

7. The police themselves knowingly introduced contraband into the residence. Sustaining this warrant would risk the use of

5. HRS § 712–1242(1)(b)(i) provides:

> **Promoting a dangerous drug in the second degree.** (1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:
> . . . .
> (b) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:
> (i) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers; . . . .

6. The fourth amendment to the United States Constitution provides:

search warrants as a subterfuge for searches exceeding any factual basis in the affidavits supporting the warrants.

## CONCLUSIONS OF LAW

9. At the time Officer D'Aquila applied for a search warrant, police knew only that the parcel was addressed to Mr. Scott at his home residence. Police lacked any facts concerning Mr. Scott's involvement in criminal activity or any facts indicating the presence of any other contraband on the premises.

10. The affidavit indicates that the warrant would be executed within "a reasonable amount of time." The resulting warrant permitted the search to be conducted between 7:00 a.m. and 10:00 p.m., within ten days from the date of its issuance.

11. Although the judicial authorization to search Mr. Scott's residence anticipated the parcel being on the premises, nothing in the affidavit supports the conclusion that, once delivered, the parcel would still be located on the premises at the time the warrant eventually would be executed.

12. Insufficient facts supported probable cause to issue the search warrant in this case.

## II. THE ICA'S DECISION

After balancing an individual's constitutional right against "unreasonable government intrusions"[6] and the government's duty

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

Article I, section 7, of the Hawai'i Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and

to "ensure that the health, safety, and welfare of Hawai'i's citizens are protected against the infiltration into our society of contraband drugs," *Scott,* slip. op. at 10–11, the ICA concluded that ASWs were constitutionally permissible so long as the Warrant:

(1) is issued by an authorized judge based on probable cause supported by oath or affirmation; (2) is based on a clear showing, supported by oath or affirmation, of law enforcement's need to have the ASW issued before the occurrence of the event that will generate the probable cause; (3) particularly describes the place to be searched and the things to be seized; (4) authorizes a search only upon the occurrence of the event generating the probable cause; (5) authorizes a search only within the probable life of the probable cause; and (6) is executed before the probable cause in fact expires.

*Id.,* slip. op. at 13–14.

In response to Scott's argument that Hawai'i law requires a showing of *present* probable cause, the ICA held that:

[A]s a general proposition the facts put forward to justify issuance of an anticipatory warrant are more likely to establish that probable cause will exist at the time of the search than the typical warrant based solely upon the known prior location of the items to be seized at the place to be searched. As pointed out in *People v. Glen:*

At best, present possession is only probative of the likelihood of future possession. In cases [involving anticipatory warrants] the certainty of future possession is greater or is often greater than that based on information of past and presumably current possession.

*Id.* slip. op. at 12–13 (quoting 2 W. La Fave, *supra* note 1, at 366 (quoting *People v. Glen,* 30 N.Y.2d 252, 331 N.Y.S.2d 656, 660, 282 N.E.2d 614, 617, *amended sub nom People v. Baker,* 30 N.Y.2d 754, 333 N.Y.S.2d 179, 284 N.E.2d 161, *cert. denied,* 409 U.S. 849, 93

S.Ct. 58, 34 L.Ed.2d 91 (1972)). According to the ICA "as long as the evidence creates substantial probability that the seizable property will be on the premises when searched," *Glen,* 331 N.Y.S.2d at 660, 282 N.E.2d at 617, and the "evidence ... is on a sure course to its destination, as in the mail," *United States v. Hale,* 784 F.2d 1465, 1468 (9th Cir.), *cert. denied,* 479 U.S. 829, 107 S.Ct. 110, 93 L.Ed.2d 59 (1986) (citation omitted), present probable cause is not required to issue an ASW. *Scott,* slip. op. at 13.

However, the ICA invalidated the warrant in *Scott* because "the ASW partially failed to satisfy requirement (1) and completely failed to satisfy requirements (4) and (5)." *Scott,* slip. op. at 2.

In the ICA's opinion, that portion of the warrant authorizing the police officers to search for items other than the parcel containing the contraband drugs violated requirement (1) of the test. *Id.,* slip. op. at 17. The ICA reasoned that Officer D'Aquila's supporting affidavit "presented no facts to support a reasonable inference that: (a) any of the items listed in the Warrant, other than the parcel, would be located at Scott's home; (b) Scott used or sold any drugs/contraband; or (c) Scott was involved in any type of criminal behavior." *Id.*

The ICA also believed that the warrant failed to satisfy requirement (4) because, "[n]otwithstanding Officer D'Aquila's averments in the affidavit that the search would not be conducted until after delivery of the Federal Express parcel, the Warrant failed to condition its execution upon actual delivery of the parcel." *Id.* at 18. In other words, the warrant was invalid because the conditions precedent to its execution were not stated on the face of the warrant.

Finally, the ICA held that the warrant did not satisfy requirement (5), which requires that the warrant authorize a search only within the probable life of the probable cause. *Id.* at 21. The ICA was troubled by the ten-day life of the warrant. It felt that

the persons or things to be seized or the communications to be intercepted.

84

"[a]bsent additional facts tending to show otherwise, a one-shot type of crime, such as a single instance of possession or sale of some form of contraband, will support a finding of probable cause only for a few days at best." *Id.* at 20 (citing 2 W. La Fave, *supra* note 1, § 3.7(a), at 342) (footnote omitted). Therefore, "[i]f the object of the search ordered by the ASW is limited to contraband which is expected to be delivered to a specific location, the warrant must limit the time it allows for execution of the warrant, depending on the situation, to a period less than the maximum ten days permitted under HRPP Rule 41." *Id.* at 21. In the instant case, "[s]ince the probable life of the probable cause was less than ten days, the ten-day Warrant was not supported by probable cause when it was issued." *Id.*

On May 20, 1997, the prosecution applied for a writ of certiorari seeking review of the ICA's opinion, which we granted on May 30, 1997.

### III. *DISCUSSION*

■ In response to Scott's argument, which he raised at the motion to suppress evidence, that an ASW is impermissible under our current statutory provisions, the ICA cited professor La Fave's treatise for the proposition that the lack of present probable cause does not cause an ASW to be *per se unconstitutional. Scott,* slip. op. at 12–13. Whether we agree with that proposition or not, the issue presented on appeal was whether an ASW is permissible under our statute and rules of penal procedure. Accordingly, the validity of such a warrant must still be scrutinized in light of HRS § 803–31 and HRPP Rule 41(a), which the ICA failed to do in this case.

"It is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Instead, our sole duty is to give effect to the statute's plain and obvious meaning." *Ross v. Stouffer Hotel Co.,* 76 Hawai'i 454, 461, 879 P.2d 1037, 1044–45

(1994) (citations omitted). Moreover, "[i]n interpreting a statute, we give the operative words their common meaning, unless there is something in the statute requiring a different interpretation." *Id.*

Given these guiding principles, we hold that the plain and unambiguous language of HRS § 803–31 does not permit the issuance of an ASW. The plain language of the statute defines a search warrant as an order or writing commanding an officer to search for articles supposed to be *in the possession of* the person whose premises are to be searched. *See supra* note 2. Here, the parcel containing the contraband drugs was (1) in the possession of the police officers at the time the search warrant was issued and (2) not with the person whose premises are to be searched. The expectation that the parcel would be at the premises at the time of the future search is insufficient under the plain wording of the statute.

In addition to the plain and unambiguous language of HRS § 803–31, we also look to HRPP Rule 41. Under HRPP Rule 41(a) a search warrant "may be issued by any district or circuit judge within the circuit wherein the property sought *is located.*" (Emphasis added). The question, therefore, is whether the use of present-tense language in the rule ("is located") required that there be probable cause to believe that the parcel containing the methamphetamine was at Scott's residence at the time the warrant was issued and not at some future time.

In answering this question, we look to the history of and amendment to Fed.R.Crim.P. 41(a)(1) for guidance. The federal rule prior to the 1990 amendment, which we used in drafting and promulgating our HRPP in 1977, provided that:

> A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property or person sought *is located,* upon request of a federal law enforcement officer or an attorney for the government.

(Emphasis added). Because there were questions whether the "is located" language

required probable cause to believe that the property or person was located at the place to be searched at the time of the issuance of the search warrant, the words "is located" was deleted from the federal rule.[7] According to the 1990 advisory committee's note to Fed.R.Crim.P. 41(a), the amended rule

> permits anticipatory search warrants by omitting the words "is located," which in the past required that in all instances the object of the search had to be located within the district *at the time the warrant was issued.* Now a search for property or a person within the district, or expected to be within the district, is valid if it otherwise complies with the rule.

(Emphasis added). Therefore, Fed. R.Crim.P. Rule 41(a)(1) was amended specifically to allow for ASWs by deleting present-tense language, such as that currently appearing in HRPP Rule 41(a). We agree with the advisory committee that the use of the present tense language "is located" required probable cause to believe that the person or property is on the premises *at the time a judge issues a warrant.* Accordingly, we hold that the ASW failed to comply with the warrant requirements of HRPP 41(a).

Based on the foregoing, we hold that, regardless of whether ASWs otherwise pass constitutional muster, they are impermissible under HRS § 803–31 and fail to comply with the warrant requirements under HRPP 41(a).[8]

We realize the importance and utility of an ASW in drug investigations, especially when "dealing with the furtive and transitory activities of persons who traffic in narcotics." 2 W. La Fave, *supra* note 1, at 365. However, it is incumbent upon the legislature to amend HRS § 803–31 to provide a legal basis for law enforcement officials to utilize ASWs.

## IV. CONCLUSION

For the above reasons, we hold that ASWs are impermissible under HRS § 803–31 and fail to comply with the warrant requirements of HRPP 41(a). Accordingly, we affirm the circuit court's June 9, 1996 Order, but for reasons different from the ICA's. We further direct that an order depublishing the ICA opinion, pursuant to Rule 2(a) of the Rules of the Intermediate Court of Appeals, be filed concurrently with this opinion.

---

**7.** Fed.R.Crim.P. 41(a)(1) (1990) provides, in pertinent part:
[A] search warrant authorized by this rule may be issued (1) by a federal magistrate, or a state court of record within the federal district, for a search of property or for a person within the district. . . .

**8.** We note that other jurisdictions have recently held that their statutes required present probable cause to issue a search warrant. *See Ex Parte Oswalt,* 686 So.2d 368 (Ala.1996); *People v. Poirez,* 904 P.2d 880 (Colo.1995); *People v. Ross,* 267 Ill.App.3d 711, 205 Ill.Dec. 49, 642 N.E.2d 914 (1994); *State v. Gillespie,* 530 N.W.2d 446 (Iowa 1995).