Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000133
31-DEC-2015
01:56 PM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

STATE OF HAWAI'I, Plaintiff-Appellee,
vs.
JASON CURTIS and MELISSA HALL,
Defendants-Appellants,
and
GENEVIEVE WALKER, Defendant-Appellee.

CAAP NOS. 12-0000133 and 12-0000134

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR NO. 11-1-0016)

DECEMBER 31, 2015

NAKAMURA, CHIEF JUDGE, AND LEONARD AND REIFURTH, JJ.

OPINION OF THE COURT BY NAKAMURA, C.J.

A FedEx employee opened a parcel he suspected contained illegal narcotics and discovered approximately eight pounds of marijuana. The FedEx employee notified law enforcement, and the parcel, which was addressed to a Kaua'i residence, was eventually turned over to the Kaua'i Police Department (KPD). A KPD officer applied for an anticipatory search warrant, which is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be

located at a specified place." United States v. Grubbs, 547 U.S. 90, 94 (2006). Anticipatory warrants generally seek authority to search after the occurrence of a future event, referred to as the "triggering condition," which is often the delivery of a package containing contraband to the premises to be searched. See id.

In his affidavit in support of the anticipatory search warrant, a KPD officer explained that the KPD intended to effect a controlled delivery of the FedEx parcel to the residence to which the parcel was addressed and requested a warrant authorizing a search of the residence after the parcel was delivered. The search warrant itself, however, which was issued by a judge, did not contain the triggering condition and authorized the execution of the warrant "forthwith."

After the controlled delivery was completed and the parcel was taken into the residence, the KPD executed the search warrant. During the search, KPD officers observed the defendants present in the residence, and the officers found the contents of the opened parcel, including the marijuana, in various parts of the residence as well as drug paraphernalia.

The defendants moved to suppress the evidence obtained as the result of the search, challenging the validity of the warrant. The Circuit Court of the Fifth Circuit (Circuit Court)[1]/ denied the defendants' suppression motion.

On appeal, Defendants-Appellants Jason Curtis (Curtis) and Melissa Hall (Hall) argue that the Circuit Court erred in determining that the search warrant was valid and in denying their motion to suppress evidence. We affirm the Circuit Court.

In Grubbs, the United States Supreme Court held that the Fourth Amendment "does not require that the triggering condition for an anticipatory search warrant be set forth in the warrant itself[.]" Id. at 99. As explained below, we follow Grubbs and other courts that have come to the same conclusion.

_____

[1]/ The Honorable Kathleen N.A. Watanabe presided over the proceedings relevant to this appeal.

2

In this case, (1) the officer's affidavit made clear that the execution of the search warrant was conditioned on the delivery of the FedEx package to the residence to be searched and (2) this triggering condition was satisfied before the warrant was executed.  See United States v. Moetamedi, 46 F.3d 225, 229 (2d Cir. 1995).  We conclude, under the circumstances of this case, that the anticipatory search warrant was valid and that the Circuit Court properly denied the defendants' motion to suppress evidence.

BACKGROUND

I.

A FedEx employee at the Honolulu FedEx sorting facility opened a parcel he suspected contained illegal narcotics.  The parcel was addressed to "Jennifer ROBERTSON" at a Kaua'i residence address (Subject Premises).  After discovering plastic bags in the parcel that appeared to contain marijuana, the FedEx employee notified law enforcement of his discovery.  The parcel and its contents were eventually turned over to the KPD.  After testing and weighing the suspected marijuana, the KPD determined that the parcel contained approximately eight pounds of marijuana.

KPD Officer Paris Resinto (Officer Resinto) applied for and obtained a court order authorizing KPD officers to install in the parcel and monitor a tracking device that would permit the KPD to track the location of the parcel and determine when the parcel was opened.  In conjunction with obtaining the order for the tracking device, Officer Resinto applied for an anticipatory search warrant to search the Subject Premises for the parcel and its contents, including the tracking device.

Officer Resinto's affidavit in support of the anticipatory search warrant explained that the KPD planned to effect a controlled delivery of the parcel under police surveillance to the Subject Premises to "identify the person(s) involved in this illegal drug shipment"; that the KPD would install the tracking device in the parcel; and that after the

3

tracking device was installed, Officer Resinto and KPD Sergeant Darren Rose (Sergeant Rose) would maintain custody of the parcel until it is delivered to the Subject Premises.[2/] The affidavit stated that Officer Resinto "has reasonable grounds to believe that the property described herein will be located in the [Subject Premises] after the time of delivery of the suspect parcel and request that a search warrant issue commanding that a search be made of said residence for said property[.]" The affidavit also requested the issuance of a search warrant to search the Subject Premises "after the time of delivery of the subject parcel[.]"

Based on Officer Resinto's affidavit, a District Court Judge issued a search warrant authorizing KPD officers to search the Subject Premises for the parcel and its contents. The search warrant, titled "ANTICIPATORY SEARCH WARRANT," did not set forth the triggering condition for the execution of warrant, namely, the delivery of the parcel to the Subject Premises, that was identified in Officer Resinto's affidavit. Rather, the search warrant stated:

> Affidavit(s) having been made before me that the property described herein may be found at the location set forth herein and that it falls within the grounds specified by said affidavit(s). And I am satisfied that there is probable cause to believe that the property described herein <u>is located</u> within the property to be searched and that the foregoing grounds for application for issuance of a search warrant exist:
>
> YOU ARE HEREBY COMMANDED <u>forthwith</u> to search:
>
> [The Subject Premises]

(Emphases added.)

Within hours after the issuance of the search warrant, the KPD effected a controlled delivery of the parcel to the Subject Premises. Sergeant Rose approached the Subject Premises

---

[2/] The affidavit in support of the anticipatory search warrant incorporated documents including the application and order for the tracking device.

and handed the parcel to Curtis, who carried the parcel inside the Subject Premises. Sergeant Rose also saw Hall and co-defendant Genevieve Walker (Walker). Officer Rose asked Walker if she was "Jennifer Robertson," the named addressee of the parcel. Walker said yes and signed the FedEx delivery form. Sergeant Rose left the Subject Premises and notified other KPD officers participating in the investigation that the parcel had been delivered.

About five minutes after the parcel had been delivered, the tracking device alerted the KPD officers that the parcel had been opened. In response, the KPD officers went to the Subject Premises and executed the search warrant. In executing the warrant, the officers observed Curtis, Hall, and Walker present in the Subject Premises, and the officers found the contents of the opened parcel, including the marijuana, in various parts of the residence. The officers recovered one of the bags of marijuana from the parcel in the living room next to Hall and Walker. The officers also recovered drug paraphernalia and over $1,000 in cash.

II.

Curtis, Hall, and Walker (collectively, Defendants) were charged with second-degree commercial promotion of marijuana, unlawful use of drug paraphernalia, and second-degree promoting a detrimental drug. Walker filed a "Motion to Quash Search Warrant and Suppress Illegally Obtained Evidence and Statements" (Suppression Motion), challenging the validity of the warrant. Among other things, Walker argued that the search warrant was invalid because it did not contain a description of the "triggering condition" on its face. Curtis and Hall joined in Walker's Suppression Motion.

The Circuit Court held a hearing on the Suppression Motion. The Circuit Court denied the Suppression Motion and issued "Findings of Fact, Conclusions of Law, and Order Denying [the Suppression Motion]" (Suppression Order). In its

5

Suppression Order, the Circuit Court made the following pertinent findings of fact:

4. On December 1, 2010, a Fed-Ex employee unsealed and searched a parcel addressed to Defendants' vacation rental, as the employee suspected that the parcel contained illegal narcotics. Inside the parcel, the employee found a large quantity of marijuana. The parcel was left unsealed and open, and was turned over to the Drug Enforcement Administration of the federal government ("DEA"). The DEA re-packaged the open parcel and shipped it to KPD, which confirmed that the parcel contained 7.95 pounds of a green leafy substance that tested positive for the presence of (THC) marijuana.

5. On December 2, 2010, KPD requested and received an order to install a mobile tracking device that would allow the parcel to be tracked, and would alert KPD when the parcel was open.

6. KPD also applied for, and received, an anticipatory search warrant for Defendants' residence, which authorized a search for the parcel and its contents.

7. On its first page, the Anticipatory Search Warrant recited that "I am satisfied that there is probable cause to believe that the property described herein is located within the property to be searched and that the foregoing grounds for application for issuance of a search warrant exist."

8. Attached to the Anticipatory Search Warrant, was a Supporting Affidavit that explained in detail the procedures that KPD planned to execute pursuant to the search warrant: (1) that a tracking device would be placed inside the parcel; (2) that KPD would maintain secure and exclusive possession of the parcel; (3) that KPD would seek to deliver the parcel to Defendants' residence, and would also track the parcel; and (4) that KPD would seek to execute the search warrant after the tracking device indicated that the parcel had been opened.

9. On December 2, 2010, KPD resealed the parcel with the tracking device inside, and delivered it to Defendants' residence, where Defendant Walker signed for the parcel.

10. KPD waited until the parcel was inside the Defendants' residence, and until tracking device indicated that the box had been opened, and then executed the Anticipatory Search Warrant finding marijuana outside the parcel on the floor between Defendants -- next to marijuana bong.

Relying on the United States Supreme Court's decision in Grubbs, the Circuit Court concluded in relevant part as follows:

> 3. The State of Hawai'i has the authority to provide constitutional protections to citizens above and beyond that provided by the U.S. Constitution and the U.S. Supreme Court, and has done so when the Hawai'i Supreme Court has deemed necessary. *State v. Kaluna*, 55 Haw. 361, 367-69, 520 P.2d 51, 57-58 (1974).
>
> 4. The Hawai'i Supreme Court has, however, not expanded on the constitutional protections provided by the U.S. Constitution and U.S. Supreme Court with respect to anticipatory search warrants.
>
> 5. In accordance with controlling case law, anticipatory search warrants need not contain future tense anticipatory or triggering language where the accompanying supporting affidavit adequately demonstrates the anticipatory nature and intent of the warrant itself. *U.S. v. Grubbs*, 547 U.S. 90, 126 S.Ct. 1494 (2006).
>
> . . . .
>
> 9. Read in totality, the Anticipatory Search Warrant at issue is in accordance with *HRS Section 803-31* (as amended effective April 29, 1998), and is not constitutionally invalidated by present tense language that appears on page one of the warrant. *HRS Section 803-31.* *U.S. v. Grubbs*, 547 U.S. 90, 126 S.Ct. 1494 (2006).

Curtis filed a motion to reconsider the Suppression Order, in which Hall and Walker joined. The Circuit Court denied the motion to reconsider.

On February 6, 2012, Curtis and Hall entered conditional no contest pleas to the amended charge of first-degree promoting a detrimental drug, reserving the right to appeal the Circuit Court's Suppression Order and its order denying the motion to reconsider the Suppression Order. Curtis and Hall were each sentenced to pay a $5,000 fine and a $105 crime victim compensation fee. Their respective Judgments were entered on February 8, 2012.[3/] Curtis and Hall each appeal from the their Judgments, and their appeals were consolidated by this court.

---

[3/] The record indicates that pursuant to a plea agreement, the charges against Walker were dismissed without prejudice, and Walker is not a party to this appeal.

DISCUSSION

On appeal, Curtis and Hall challenge the validity of the search warrant, focusing on the warrant's lack of a triggering condition. They argue that because the search warrant did not contain a triggering condition, it constituted a general search warrant which violated their rights under the Fourth Amendment to the United States Constitution.[4] They further argue that the search warrant was invalid under the greater protection provided by Article I, section 7 of the Hawai'i Constitution.[5] We conclude that the search warrant in this case was a valid anticipatory search warrant and that the Circuit Court properly denied Defendants' suppression motion.

I.

At the outset, we note that as Curtis and Hall argue and Plaintiff-Appellee State of Hawai'i (State) concedes, the Circuit Court applied the wrong standard in reviewing the issuance of the search warrant by the District Court Judge. The Circuit Court concluded that it was "bound to pay great deference" to the issuing judge's probable cause determination. It is clear, however, that Hawai'i courts apply a *de novo* standard of review to the issuing judge's determination of probable cause. State v. Navas, 81 Hawai'i 113, 123, 913 P.2d 39, 49 (1996).

---

[4] The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[5] Article I, section 7 of the Hawai'i Constitution provides:

The right of the people to be secured in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

8

In this appeal, the facts found by the Circuit Court are not disputed and the validity of the search warrant turns on questions of law. Thus, the Circuit Court's application of an incorrect standard in reviewing probable cause for the warrant does not affect our *de novo* review.

## II.

Curtis' and Hall's challenge to the validity of the search warrant under the Fourth Amendment is foreclosed by the United States Supreme Court's decision in Grubbs. In Grubbs, the Supreme Court considered an anticipatory search warrant under facts very similar to this case. See Grubbs, 547 U.S. at 92-93. Like the warrant in this case, the warrant in Grubbs did not set forth the triggering condition, but was "inartfully drafted" and written on a "form 'forthwith' search warrant," and the only indication that the warrant was an anticipatory search warrant was the word "anticipatory" in its title. United States v. Grubbs, 377 F.3d 1072, 1074 (9th Cir. 2004) (Grubbs/9th Cir.) (describing the warrant), amended, 389 F.3d 1306 (9th Cir. 2004), rev'd by 547 U.S. 90 (2006). Moreover, like the warrant in this case, the Grubbs warrant, on its face, referred to probable cause to search for contraband in a package (that had yet to be delivered to the premises) in the present tense. Grubbs/9th Cir., 377 F.3d at 1073-74. The Grubbs warrant stated: "I [(the magistrate judge issuing the warrant)] am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described *is now concealed* on the person or premises above-described and establish grounds for the issuance of this warrant." Grubbs/9th Cir., 377 F.3d at 1074 (emphasis added).

Like the supporting affidavit in this case, the affidavit on which the warrant was based in Grubbs explained that the search warrant was sought in connection with law enforcement's future delivery of a package containing contraband (a videotape of child pornography) to a residence, and that the warrant would be executed after the controlled delivery was

effected. Grubbs, 547 U.S. at 92. Also, like the affidavit in this case, the affiant for the Grubbs affidavit asserted that he had probable cause to believe that the items for which the warrant was sought "will be found at [Grubb's residence]." Id. (brackets in original).

Under these facts, the Supreme Court reversed the judgment of the United States Court of Appeals for the Ninth Circuit (Ninth Circuit), which had held that the anticipatory search warrant was invalid. Id. at 99. The Ninth Circuit had invalidated the anticipatory search warrant because it failed to specify the triggering condition, which led the Ninth Circuit to conclude that the warrant violated the Fourth Amendment's particularity requirement. Id. at 93-94, 97.

In rejecting the Ninth Circuit's analysis, the Supreme Court held that the Fourth Amendment "specifies only two matters that must be 'particularly describ[ed]' in the warrant: 'the place to be searched' and 'the persons or things to be seized.'" Id. at 97 (brackets in original). The Court stated, "'Nothing in the language of the Constitution or in this Court's decisions interpreting that language suggests that, in addition to the [requirements set forth in the text], search warrants also must include a specification of the precise manner in which they are to be executed.'" Id. at 98 (citation omitted; brackets in original). The Court held that "[b]ecause the Fourth Amendment does not require that the triggering condition for an anticipatory search warrant be set forth in the warrant itself, the [Ninth Circuit] erred in invalidating the warrant at issue here." Id. at 99.

In reaching its decision, the Court rejected two policy arguments asserted by Grubbs. First, the Court rejected the argument that setting forth the triggering condition in the warrant itself was necessary because the warrant should contain preconditions to the valid exercise of executive power "'to delineate the limits of the executing officer's power.'" Id. at 98. The Court held that the Fourth Amendment does not require

that "'if there is a precondition to the valid exercise of executive power, that precondition must be particularly identified on the face of the warrant.'" Id. (brackets omitted). The Court noted that "[t]he Fourth Amendment does not require that the warrant set forth the magistrate's basis for finding probable cause, even though probable cause is the quintessential 'precondition to the valid exercise of executive power.'" Id. The Court concluded that the Fourth Amendment similarly does not require the warrant to describe a triggering condition. Id. at 98.

Second, the Court rejected the argument that listing the triggering condition in the warrant was necessary to assure the property owner that the search is valid. Id. at 98-99. The Court reasoned that neither the Fourth Amendment nor the Federal Rules of Criminal Procedure (FRCP) Rule 41 requires the executing officer to present a copy of the warrant to the property owner before conducting the search. Id. The Court held that the Constitution does not give property owners "license to engage the police in debate over the basis for the warrant," but protects them by requiring that an impartial judicial officer issue the warrant and by providing "a right to suppress evidence improperly obtained and a cause of action for damages." Id. at 99.

III.

Other courts, many before the Supreme Court's decision in Grubbs, have held that the failure to set forth the triggering condition in an anticipatory search warrant did not render the warrant invalid. E.g. Moetamedi, 46 F.3d at 229; United States v. Hugoboom, 112 F.3d 1081, 1087 (10th Cir. 1997); United States v. Rey, 923 F.2d 1217, 1221 (6th Cir. 1991); State v. Moran, 791 So.2d 1065, 1069-71 (Ala. Crim. App. 2001); Alvidres v. Superior Court, 90 Cal. Rptr. 682, 684-86 (Cal. Ct. App. 1970). Courts have upheld anticipatory search warrants that do not describe the triggering condition as long as two conditions are met: (1) the officer's affidavit specifically identifies the triggering condition for the execution of the warrant; and (2) this

11

triggering condition is satisfied before the warrant is executed. See Moetamedi, 46 F.3d at 229; Moran, 791 So.2d at 1069-71; Hugoboom, 112 F.3d at 1087.

In the context of this case, where the anticipatory search warrant is sought to search for items from a controlled delivery after the delivery is effected, any risk that an anticipatory search warrant would be executed prematurely if the warrant fails to identify the triggering condition is exceedingly low. As one court cogently explained:

> It is logical to assume that when officers obtain a warrant to search for and seize particular property which they have probable cause to believe will be on the premises at a specified future time, they would not be disposed to undermine the success of their efforts by premature execution of the warrant.

Alvidres, 90 Cal. Rptr. at 686.

## IV.

As relevant to this case, the particularity requirement of Article I, section 7 of the Hawai'i Constitution is the same as that of the Fourth Amendment. Both only require that the warrant particularly describe the place to be searched and the persons or things to be seized; they do not require that search warrants additionally "include a specification of the precise manner in which they are to be executed." See Grubbs, 547 U.S. at 98 (internal quotation marks and citation omitted). Moreover, similar to FRCP Rule 41, Hawai'i Rules of Penal Procedure (HRPP) Rule 41 does not require that a copy of the search warrant be presented to the property owner or others before the warrant is executed. We therefore apply the analysis of the United States Supreme Court in Grubbs and conclude that Article I, section 7 does not require an anticipatory search warrant to contain the triggering condition in order to be valid.[6]

---

[6] Although we conclude that including the triggering condition in the warrant is not constitutionally required, we believe the better practice would be to include the triggering condition in the warrant and encourage judges issuing warrants to promote this practice.

Although the triggering condition need not be stated in the warrant itself, we agree with courts holding that the following two conditions must be satisfied for an anticipatory search warrant that does not state the triggering condition to be valid: (1) the officer's affidavit must specifically identify the triggering condition for the execution of the warrant; and (2) this triggering condition must be satisfied before the warrant is executed. Moetamedi, 46 F.3d at 229; Moran, 791 So.2d at 1069-71; Hugoboom, 112 F.3d at 1087.

Here, the requirements for a valid anticipatory search warrant were met and the surrounding circumstances provide additional support for upholding the warrant. It is undisputed that the search warrant was sought in connection with the planned controlled delivery of a parcel containing marijuana to the residence to which the parcel was addressed. The affidavit in support of the search warrant specifically identified the triggering condition for the execution of the warrant -- the delivery of the parcel to the Subject Premises. When Officer Resinto applied to the judge for the warrant, it was clear, based on the information contained in the affidavit, that the parcel had not yet been delivered and was still in the custody of the KPD. There was no plausible risk that the warrant would be executed before the triggering condition, the controlled delivery of the parcel, had been completed. Indeed, the very purpose of the investigation was to identify the persons involved in the illegal drug shipment by effecting a controlled delivery of the parcel to the Subject Premises, and the warrant sought to search the Subject Premises for the parcel and its contents. The KPD waited until the parcel had been delivered to the Subject Premises (and the tracking device indicated the parcel had been opened) before executing the warrant. Under these circumstances, we conclude that the anticipatory search warrant was valid.

V.

We note that in 1997, this court in State v. Scott, No. 18170, slip op. (Hawai'i App. Apr. 30, 1997) (Scott I) concluded

13

that an anticipatory search warrant was constitutionally permissible but imposed six conditions for a valid anticipatory search warrant, including that the warrant "authorizes a search only upon the occurrence of the event generating the probable cause." Scott I, slip op. at 1-2, 13-14.[2] However, in State v. Scott, 87 Hawai'i 80, 951 P.2d 1243 (1998) (Scott II), the Hawai'i Supreme Court, without addressing the constitutionality of anticipatory search warrants, held that such warrants were not permitted under the then-existing HRS § 803-31 (1993) and HRPP Rule 41(a) (1995). Scott II, 87 Hawai'i at 81, 951 P.2d at 1244. The supreme count concluded that anticipatory search warrants were not permitted under HRS § 803-31 because the statute defined a search warrant as authorizing the search for articles "supposed to be *in the possession of*" the person whose premises are to be searched. Id. at 84, 87 Hawai'i at 1247. The supreme court also held that HRPP Rule 41 did not authorize anticipatory search warrants because the rule only authorized a judge to issue a search warrant within the circuit where "'the property sought *is located*.'" Id.

Significant to our analysis, the supreme court in Scott II did not address the conditions this court had imposed for a valid anticipatory search warrant, but instead ordered that our opinion be depublished, which stripped Scott I of its precedential value and rendered it non-citable. Id. at 85, 951

---

[2] The six conditions set forth in Scott I for a valid anticipatory search warrant were that it:

> (1) is issued by an authorized judge based on probable cause supported by oath or affirmation; (2) is based on a clear showing, supported by oath or affirmation, of law enforcement's need to have the [anticipatory search warrant] issued before the occurrence of the event that will generate the probable cause; (3) particularly describes the place to be searched and the things to be seized; (4) authorizes a search only upon the occurrence of the event generating the probable cause; (5) authorizes a search only within the probable life of the probable cause; and (6) is executed before the probable cause in fact expires.

Scott I, slip. op. at 1-2, 13-14.

P.2d 80.[8/]  In addition, the federal cases this court relied upon in _Scott I_ to impose the requirement that the triggering condition be set forth in the warrant have effectively been overruled by the United States Supreme Court's decision in _Grubbs_.[9/]  In response to _Scott II_, the Hawai‘i Legislature amended HRS § 803-31 in 1998 to authorize the issuance of anticipatory search warrants.  Haw. Sess. Laws Act 65, § 1 at 145.  The 1998 amendment added the phrase "or which are anticipated to be in the possession of" to define a search warrant as authorizing the search for articles "supposed to be in the possession of _or which are anticipated to be in the possession of_" the person whose premises are to be searched.  _Id._ at § 2 at 145 (emphasis added).  However, besides authorizing anticipatory search warrants, the amended statute did not impose any specific conditions for a valid anticipatory search warrant.[10/]  Moreover, the _Grubbs_ decision was issued after both _Scott I_ and the amendment to HRS § 803-31.  _Scott I_ is not precedential, and we decline to follow its conclusion that an anticipatory search warrant must itself state the triggering condition to be valid.

---

[8/] Hawai‘i Rules of Appellate Procedure Rule 35(c)(1) (2010) provides, in relevant part: "A memorandum opinion or unpublished dispositional order filed before July 1, 2008 shall not be cited in any other action or proceeding[.]"

[9/] The state case we cited, _Commonwealth v. Callahan_, 671 N.E.2d 958 (Mass. App. Ct. (1996), was later overruled by _Commonwealth v. Gauthier_, 679 N.E.2d 211 (Mass. 1997).

[10/] We note that a House Judiciary Committee Report regarding the bill that was subsequently enacted states that the Committee "agrees with the Intermediate Court of Appeals that anticipatory search warrants shall" comply with the six conditions listed in _Scott I_ for a valid anticipatory search warrant.  H. Stand. Comm. Rep. No. 1233-98, in 1998 House Journal, at 1552.  However, the interpretation of what the constitution requires is the province of the courts.  _See Del Rio v. Crake_, 87 Hawai‘i 297, 304, 955 P.2d 90, 97 (1998).  In addition, the amended statute itself did not incorporate the conditions for a valid anticipatory search warrant listed in _Scott I_.

VI.

"The 'primary purpose of both the Fourth Amendment and article I, section 7 of the Hawai'i Constitution is to safeguard the privacy and security of individuals against arbitrary invasions by government officials.'" State v. McKnight, 131 Hawai'i 379, 399, 319 P.3d 298, 318 (2013) (citation omitted). Although we may construe Article I, section 7 of the Hawai'i Constitution to provide broader protection than the Fourth Amendment, see State v. Lopez, 78 Hawai'i 433, 445, 896 P.2d 889, 901 (1995), we see no basis for doing so in this case.

The vast majority of jurisdictions, including the United State Supreme Court, have held that anticipatory search warrants are not per se unconstitutional. Grubbs, 547 U.S. at 95 (holding that anticipatory search warrants are not categorically unconstitutional under the Fourth Amendment in agreement with "every [federal] Court of Appeals to confront the issue"); State v. Womack, 967 P.2d 536, 539-40 (Utah Ct. App. 1998) (joining "the overwhelming majority of jurisdictions in recognizing that anticipatory search warrants are not per se unconstitutional" and collecting cases); Scott II, 87 Hawai'i at 81 n.2, 951 P.2d at 1244 n.2 (noting "that most jurisdictions that have considered [anticipatory search warrants] have concluded that they are not per se unconstitutional"). We join these jurisdictions in holding that anticipatory search warrants are not *per se* unconstitutional.[11]

For an anticipatory search warrant to be valid, there must be probable cause to search the premises after the triggering condition occurs as well as probable cause to believe that the triggering condition will occur. See Grubbs, 547 U.S. at 96-97. We hold, consistent with other courts that have considered anticipatory search warrants, that imposing the

---

[11] We note that Curtis and Hall do not contend that anticipatory search warrants are *per se* unconstitutional.

16

additional requirements we have adopted -- (1) that the officer's affidavit must specifically identify the triggering condition for the execution of the warrant; and (2) that this triggering condition must be satisfied before the warrant is executed -- is sufficient to safeguard the privacy and security of individuals without demanding that the triggering condition be set forth in the warrant.

We conclude that the anticipatory search warrant in this case satisfied the requirements of the Fourth Amendment and Article I, section 7 and was a valid anticipatory search warrant. We further conclude that suppression of the evidence obtained pursuant to the anticipatory search warrant would not further the purposes underlying Hawai'i's exclusionary rule of "(1) judicial integrity, (2) the protection of individual privacy, and (3) deterrence of illegal police misconduct." McKnight, 131 Hawai'i at 398, 319 P.3d at 317.

The anticipatory search warrant in this case was supported by probable cause, particularly described the place to be searched and the items to be seized, and was valid. Therefore, suppression of the evidence obtained pursuant to the warrant was not necessary to preserve judicial integrity or deter illegal police misconduct. Suppression of the evidence was also not necessary for the protection of individual privacy. The supporting affidavit clearly specified the triggering condition and the officers waited until the triggering condition had occurred before executing the warrant. Requiring the triggering condition to be set forth in the warrant would not have changed the way the search was conducted in this case. See id. at 398-99, 319 P.3d at 317-18 (holding that a judge's error in misdating a search warrant did not require suppression of the evidence seized).

CONCLUSION

For the foregoing reasons, we affirm the Judgments entered against Curtis and Hall.

On the briefs:

Daniel G. Hempey
Gregory S. Meyers
(Hempey & Meyers LLP)
for Defendants-Appellants

Tracy Murakami
Deputy Prosecuting Attorney
County of Kaua'i
for Plaintiff-Appellee

*Craig H. Nakamura*

*Lawrence M Reifurth*